IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00248-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES MONTOYA,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Sonia Dave, Assistant United States Attorney for the District of Colorado, and the defendant, James Montoya, personally and by counsel, Kevin Flesch, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Agreement:**

The defendant agrees to

(1)     plead guilty to Count 1 of the Indictment charging a violation of 18 U.S.C. § 1343, Wire Fraud;

(2)     waive certain appellate and collateral attack rights, as explained in detail below;

(3)     cooperate as more fully described below;

(4)     be liable for restitution to the United States Geological Survey in an amount to be determined at the time of sentencing (the government believes the amount of restitution owed is $1,122,009.47 and the defendant believes it is approximately

COURT EXHIBIT 1

$200,000 less, for a total amount of restitution owed of $922,009.47); and

(5) agree not to contest forfeiture as more fully described below; etc.

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence at the low-end of the Guidelines range as ultimately calculated by the Court. The government further agrees to move to dismiss Counts 2 through 8 of the Indictment with prejudice at sentencing. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The government agrees not to oppose the defendant's motion for a downward departure based on an overrepresentation of criminal history category specifically a motion for the defendant's criminal history category to be considered I rather than II to pursuant to USSG § 4A1.3(b)(1).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange
Page 2 of 10

for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute[s] of conviction;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 22; or

(3) the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may

appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: a money judgment in an amount to be determined at the time of sentencing. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property

described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United State's Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.  ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of Wire Fraud are as follows:

### Count One:  18 U.S.C. § 1343

*First:* the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

*Second:* the defendant acted with specific intent to defraud;

*Third:* the defendant used interstate wire communication facilities for the purpose of carrying out the scheme; and

*Fourth:* the scheme employed false or fraudulent pretenses, representations, or promises that were material.

Source: 10th Cir. Criminal Pattern Jury Instructions, No. 2.57 (2021)

### III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Indictment is: not more than 20 years' imprisonment; maximum term of supervised release of 3 years; maximum fine of $250,000; $100 mandatory victim's fund assessment fee; restitution in an amount to be determined at the time of sentencing (the government believes the amount of restitution owed is $1,122,009.47 and the defendant believes it is approximately $200,000 less, for a total amount of restitution owed of $922,009.47).

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

James Montoya has been employed by the U.S. Department of the Interior, U.S. Geological Survey ("USGS") since 1986. Since 2002, his job title has been Information

Technology ("IT") Specialist. His assigned duty workstation was the Denver Federal Center here in Colorado. As an IT Specialist, he was assigned a government issued credit card and was authorized to purchase IT related hardware, software, storage, and support. The defendant was aware of USGS rules and policy that the government credit card was not a personal credit card and was not to be used for any unofficial purpose or transaction. From 2008 through 2023, the defendant improperly used his government credit card and has defrauded the government of $1,122,009.47 (the defendant is disputing this amount and believes the total loss amount is actually $200,000 lower or approximately $922,009.47).

The defendant improperly used his government credit card in two ways. First, the defendant created three fictious vendors using the online payment services provider PayPal. They were fictious in that they were not legitimate businesses and did not provide any products or services. These three PayPal vendors included Chiphead Solutions, Amazon Resale and Oracle Outlet. He registered and opened these PayPal accounts in his own name, and he owned and controlled these accounts The defendant directed unauthorized payments from his government credit card into his three PayPal accounts. He then transferred the funds from the unauthorized payments, from his PayPal accounts, into his linked personal bank accounts which he controlled. He submitted altered receipts, and fictious invoices and other documentation to USGS for these unauthorized purchases, claiming that they were for IT related items or services. In reality, the defendant did not provide any IT related items or services to USGS. Further, the defendant knew that such an arrangement, of personally selling IT related items or services to his employer, USGS, would not have been permissible per USGS policy. He did not disclose his ownership over these three PayPal accounts to USGS. In total, the defendant directed approximately $1,001,381.46 to his three PayPal accounts. The PayPal payments the defendant

issued using his government credit card, to execute this scheme, involved the use of interstate wire communications facilities.

The second way that the defendant improperly used his government credit was for the unauthorized purchase of goods and services from legitimate vendors including Amazon. Many of these purchases were processed by PayPal. These purchases were for personal items including, but not limited to, vintage and collectible toys as well as car parts. Again, to conceal the true nature of these purchases, the defendant submitted altered and fictious receipts, invoices and other documentation to USGS, claiming that these purchases were for IT related items or services. In total, the defendant purchased $120,628.01 in personal items from legitimate vendors. The personal purchases the defendant made using his government credit card, to execute this scheme, that were processed by PayPal involved the use of interstate wire communications facilities.

The defendant's scheme was eventually detected during a government charge card review conducted by the Office of the Inspector General, Department of the Interior.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an

estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

    a)    Under Section 2B1.1(a)(1), the base offense level is 7.

    b)    The offense level increases by 14 as the loss amount is greater than $550,000. USSG § 2B1.1(b)(1)(H).

    c)    The offense level also increases by 2 for the use of sophisticated means. USSG § 2B1.1(b)(10)C).

    d)    The offense level increases by 2 for the abuse of a position of trust. USSG § 3B1.3.

    e)    The adjusted offense level is 25.

    f)    The parties believe the offense level should decrease by 3 for acceptance of responsibility pursuant to USSG § 3E.1(a) and (b). The resulting total offense level is 22.

    g)    The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category II.

    h)    The career offender/criminal livelihood/armed career criminal adjustments do not apply.

    i)    The advisory guideline range resulting from these calculations is 46 to 57 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 41 months (bottom of Category I) to 105 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

    j)    Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $15,000 to $150,000, plus applicable interest and penalties.

    k)    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

l)  Restitution in the amount of in an amount to be determined at the time of sentencing due to the United States Geological Survey.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

**VII.  ENTIRE AGREEMENT**

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 3·7·25  
_____  
James Montoya  
Defendant

Date: 3/7/2025  
_____  
Kevin Flesch  
Attorney for Defendant

Date: 3/7/2025  
_____  
Sonia J. Dave  
Assistant U.S. Attorney